# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2022-CT-00529-SCT

*LEVERNE BRENT AND LENARD BRENT*

*v.*

*MISSISSIPPI DEPARTMENT OF HUMAN
SERVICES AND MISSISSIPPI STATE AGENCIES
WORKERS' COMPENSATION TRUST*

## ON WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 03/03/2021 |
| TRIAL JUDGE: | HON. ELEANOR JOHNSON PETERSON |
| TRIAL COURT ATTORNEYS: | JOHN H. STEVENS |
| | GEORGE ELLIS ABDO, III |
| | FRANKLIN WILLIAMS |
| | ALAN M. PURDIE |
| | MICHAEL E. D'ANTONIO, JR. |
| | GRAHAM ROSS PULVERE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANTS: | JOHN H. STEVENS |
| ATTORNEYS FOR APPELLEES: | MICHAEL E. D'ANTONIO, JR. |
| | ALAN M. PURDIE |
| | DION SHANLEY |
| NATURE OF THE CASE: | CIVIL - WORKERS' COMPENSATION |
| DISPOSITION: | REVERSED AND RENDERED - 05/30/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**RANDOLPH, CHIEF JUSTICE, FOR THE COURT:**

¶1. Leverne and Lenard Brent state the issue on appeal *verbatim ac litteratim*:

Whether or not Appellee is entitled to reimbursement to [sic] pursuant to Miss. Code Ann. § 71-3-71 for expenses paid to an expert retained by the adjuster in the workers['] compensation claim (Employer's Medical Examination) is a reimbursable expense in the Third-Party Claim [sic].

We restate the issue: whether the intervening employer/carrier, Mississippi Department of Human Services and the Mississippi State Agencies Workers' Compensation Trust, are entitled to repayment of $2,887.50 paid to a nontreating consultant, retained by an adjustment company on behalf of employer/carrier, who provided a second opinion evaluation.

## FACTS & PROCEDURAL HISTORY

¶2.     In 2009, Leverne Brent was working for the Mississippi Department of Human Services (DHS) when she was injured in a building owned by Madated, LCC. Brent's injury required medical treatment and surgery. DHS's carrier, the Mississippi State Agencies Workers' Compensation Trust (Trust), provided Brent compensation and reasonable and necessary medical expenses for treatment of her injury. The Trust engaged Cannon Cochran Management Services, Inc., as its third-party administrator (TPA).

¶3.     In 2012, Brent and her husband sued the building owner. A 9(i) petition for settlement between Brent and the building owner was approved in the amount of $750,000. DHS and the Trust (Intervenors) obtained an *ex parte* order allowing intervention months after settlement was reached. Intervenors claimed $358,210.77. Attached to their request was a sworn affidavit from an employee of the TPA that read:

> Exhibit "A" is a complete and accurate and up to date printout of benefits paid to or on behalf of Ms. Brent, and related expenses incurred as a result of her workers' compensation claim. Exhibit "A" reflects Temporary Total Disability payments of $44,577.61, medical *treatment* of $124,138.66, settlement payment of $166,500.00, vocational rehabilitation cost of $1,881.48 and *expenses* of $21,113.02. The legal fee portion is redacted as those costs are not being sought for reimbursement.

2

¶4. On September 6, 2017, Brent filed a motion to compel discovery. On October 17, 2017, Brent filed a motion to strike the order granting the intervention, challenging the $358,210.77. Brent contended that Intervenors' demand sought expenses that were not legally recoverable, including expenses to conduct surveillance and investigation of Brent. Subsequently, Intervenors reduced their demand from $358,210.77 to $335,216.27, explaining that "[t]he amount withdrawn include but are not limited to the surveillance and vocational rehabilitation expenses."

¶5. Brent's motions were heard on October 24, 2017. Brent continued to question whether the reduced demand accurately reflected her medical expenses. The trial judge ordered Intervenors to produce corresponding invoices and checks for each claimed expenditure within thirty days. Subsequently, an order approving the third-party settlement was entered, authorizing Brent's settlement with Madated for $750,000, providing that the $335,216.27 in controversy would remain in escrow until further order.

¶6. Following unsuccessful attempts by Brent to verify Intervenors' demand, Brent filed a motion for contempt. Brent pleaded that Intervenors failed to furnish "legitimate exact costs and total amount of requests for reimbursement." Brent contended:

> [A]n employer's medical examination undertaken by non-treating medical providers, which evaluated the claimant only for purposes of the litigation in the Workers' Comp claim and only for an evaluation that was solely at the request of the Workers' Comp carrier . . . . clearly are not medical treatment.

¶7.     Attached to Brent's motion was an exhibit that contained a series of email exchanges between Brent's attorney and counsel opposite.  On July 30, 2019, Brent's attorney requested answers to the following three questions:

1.      What is your client claiming as the exact total lien now?

2.      What expenses have been withdrawn from the initial claimed lien submitted back in 2017?

3.      What new expenses is your client now claiming and what is the basis of the new expenses?

¶8.     Intervenors' counsel answered on August 7, 2019, responding to the first question:

Answer: $332,009.40.  By way of explanation, $335,216.27 is the amount we escrowed.  From that, *I have deducted $2887.50 for EME [Employer Medical Evaluation] related cost* and $229.37 for amounts we were unable to document with any check or invoice.

(Emphasis added.)

¶9.     In response to the second question, counsel stated:

1.      $21,113.02 in expenses, considered to be all medical related expenses. The surveillance costs were included in the medical-related expenses. The surveillance cost was originally included in the medical expenses total, but immediately withdrawn once it was brought to our attention.

2.      *The EME expenses ($2887.50) which was a part of the medical treatment payments total has been withdrawn.*[1]

3.      $229.37 in medical payments that do not have a correlating check or documentation . . . .

(Emphasis added.)

_____

[1]The exact amount now claimed for the nontreating psychological consultant.

4

¶10. In response to the third question, Intervenors' counsel answered:

> No new expenses are being claimed. We simply pointed out that when we received the documentation, particularly the checks to claimant, we learned indemnity payments were actually made to the claimant in the amount of $45,406.19 as opposed to the number we previously provided, $44,577.61. The original number is the amount claimed.

¶11. The same day, Intervenors retracted the modified demand, stating, "[o]ne correction to the response to question one in the email I sent you this morning. *None of the escrowed expenses are withdrawn*. The lien amount is the amount escrowed minus the $229.37 for which we have no documentation. The lien amount claimed is $334,986.90." (Emphasis added.)

¶12. Despite an ever-changing demand, the trial court entered an Order Validating Lien, granting Intervenors' Motion to Establish and Settle Lien Pursuant to Section 71-3-71. The parties stipulated that $331,849.40 of Intervenors' statutory lien was payable immediately as reimbursement for compensation and medical expenses paid, leaving an amount of $3,137.50 in controversy.

¶13. The parties stipulated that the $3,137.50 would remain in escrow, awaiting a ruling from the trial court. In November 2019, Brent filed a brief in support of denying repayment of the EME expense. Brent contended that

> There is absolutely no evidence in this record which substantiates or supports the Claimant received any medical treatment from the Employer's Medical Exam (EME) from the psychologist, Angela Koestler . . . is not treatment as that term is set forth in the Workers' Compensation statute.

5

¶14. In March 2021, the trial court entered an Order granting Intervenors' Motion to Establish and Settle Lien, holding:

> The Court, having found no statutory support creating *an exception* to the plain language in § 71-3-71, finds that the optional employer medical evaluation is a medical expense within the meaning of the Act. Accordingly, this Court is of the opinion that in this limited instance, the employer is entitled to reimbursement of employer medical evaluation expenses as contemplated by § 71-3-15.

(Emphasis added.)

¶15. Brent filed a Motion to Reconsider or Set Aside and Other Relief one week later. In support, Brent attached a Full Commission Declaratory Opinion issued by the Mississippi Workers' Compensation Commission (MWCC), which was requested by a stranger to this proceeding. The MWCC found that EMEs were neither compensation nor medical expenses. In May 2022, the trial court entered an Order denying Brent's motion. In June 2022, Brent appealed the trial court's decisions. The Court of Appeals affirmed. ***Brent v. Miss. Dep't of Hum. Servs.***, No. 2022-SA-00529-COA, 2023 WL 4194268, at *1 (Miss. Ct. App. Jun. 27, 2023). Brent petitioned this Court for a writ of certiorari under Mississippi Rule of Appellate Procedure 17(a). We granted certiorari.

¶16. Brent challenges the repayment of $2,887.50, for an Employer Medical Evaluation (EME) Intervenors paid to Dr. Angela Koestler, PhD, consulting psychologist, through F.A. Richard & Associates (FARA), an adjustment company. A claim manager, who was an employee of FARA, requested that the consultant conduct an evaluation of Brent. Koestler's

6

evaluation, as instructed by FARA, was for the purpose of obtaining a second-opinion evaluation.

## STANDARD OF REVIEW

¶17. Questions of statutory interpretation are reviewed de novo. *Altman v. State*, 340 So. 3d 293, 294 (Miss. 2022) (quoting *Tipton v. State*, 150 So. 3d 82, 84 (Miss. 2014)). The function of the Court is to determine what a statute provides. *Lawson v. Honeywell Int'l Inc.*, 75 So. 3d 1024, 1027 (Miss. 2011) (citing *Russell v. State*, 231 Miss. 176, 94 So. 2d 916, 917 (1957)). This Court "neither broaden[s] nor restrict[s] the legislative act." *Barbour v. State ex rel. Hood*, 974 So. 2d 232, 240 (Miss. 2008) (alterations in original) (internal quotation marks omitted) (quoting *Miss. Ins. Guar. Ass'n v. Cole ex rel. Dillon*, 954 So. 2d 407, 412-13 (Miss. 2007)). "If the words of a statute are clear and unambiguous, the Court applies the plain meaning of the statute and refrains from using principles of statutory construction." *Miss. Dep't of Revenue v. SBC Telecom, Inc.*, 306 So. 3d 648, 652 (Miss. 2020) (quoting *Vicksburg Healthcare, LLC v. Miss. State Dep't of Health*, 292 So. 3d 223, 226 (Miss. 2020)).

## DISCUSSION

¶18. Employers who employ five or more workers are subject to the Workers' Compensation Law. Miss. Code Ann. 71-3-5 (Rev. 2021); *see* Miss. Code Ann. 71-3-1(1) (Rev. 2021) ("This chapter [Mississippi Code Sections 71-3-1 to -225 (Rev. 2021)] shall be

known and cited as 'Workers' Compensation Law' . . . .").  The purpose of that enactment

is to require employers

> [T]o pay timely temporary and permanent disability benefits to every worker who legitimately suffers a work-related injury or occupational disease arising out of and in the course of his employment, to pay *reasonable and necessary medical expenses* resulting from the work-related injury or occupational disease, and to encourage the return to work of the worker.

Miss. Code Ann. § 71-3-1(3) (Rev. 2021) (emphasis added).

¶19.    Reasonable and necessary medical expenses include "such  medical, surgical, and

other attendance or treatment, nurse and hospital service, medicine, crutches, artificial

members, and other apparatus for such period as the nature of the injury or the process of

recovery may require."  Miss. Code Ann. § 71-3-15(1) (Rev. 2021).

¶20.    Acceptance of such benefits by employees involved in third-party litigation triggers

application of Mississippi Code Section 71-3-71.  It provides:

> The acceptance of compensation benefits from or the making of a claim for compensation against an employer or insurer for the injury or death of an employee shall not affect the right of the employee or his dependents to sue any other party at law for such injury or death, but the employer or his insurer shall be entitled to reasonable notice and opportunity to join in any such action or *may intervene* therein. If such employer or insurer join in such action, they *shall be entitled to repayment* of the amount paid by them as *compensation and medical expenses* from the net proceeds of such action (after deducting the reasonable costs of collection) as hereinafter provided.

Miss. Code. Ann. § 71-3-71 (Rev. 2021) (emphasis added).

¶21.    Intervenors presented the Mississippi Workers' Compensation Medical Fee Schedule

(Fee Schedule) to the trial court.  The Fee Schedule, in accordance with Section 71-3-15,

requires employers to furnish employees with "*reasonable and necessary* medical, surgical, and hospital services and medicines, supplies or other attendance or treatment as necessary."

According to the Fee Schedule, "[t]he concept of *medical necessity is the foundation of all treatment* and reimbursement made under the provision of § 71-3-15."[2]

¶22.    For an employee's necessary medical treatment, "[t]he employer shall select competent physicians, hospitals, and other attendance or treatment and immediately furnish such services . . . to the injured employee."  Miss. Workers' Comp. Comm'n Gen. R. 1.9, https://www.mwcc.ms.gov/pdf/MWCCGeneralandProceduralRules5.pdf (last visited May 28, 2024); *see* Miss. Code Ann. § 71-3-15(1) ("The injured employee shall have the right to accept the services furnished by the employer or, in his discretion, to select one (1) competent physician of his choosing and such other specialists to whom he is referred by his chosen physician *to administer medical treatment*." (emphasis added)).

¶23.    "Should the *employer desire,* he *may* have the *employee examined* [EME] by a physician other than of the employee's choosing *for the purpose of evaluating* temporary or

---

[2]The Fee Schedule governs employer/carriers paying medical *providers* under Section 71-3-15(3).  Section 71-3-15(3) and the Fee Schedule govern "reimbursement" for employer/carriers' payment to medical *providers*.  Miss. Code Ann. § 71-3-15(3) ("Any dispute . . . over the amount of *reimbursement for services rendered* . . . shall be limited to and resolved between the *provider* and the employer or carrier in accordance with the fee dispute resolution procedures adopted by the commission." (emphasis added)).  Section 71-3-71 specified the word "repayment" for medical treatment to *employees* from employers/carriers.  Miss. Code Ann. § 71-3-71 ("If such employer or insurer join in such action, they shall be entitled to *repayment* of the amount paid by them as compensation and *medical expenses* from the net proceeds of such action . . . ." (emphasis added)).

permanent disability *or medical treatment being rendered* under such reasonable terms and conditions as may be prescribed by the commission." Miss. Code Ann. § 71-3-15(1) (emphasis added). Like Section 71-3-15(1), the Fee Schedule refers to EMEs as "*a second opinion evaluation* available to the Employer or Carrier pursuant to MCA § 71-3-15(1) (Rev. 2000) . . . ." (Emphasis added.)

¶24. In the case sub judice, the trial court erred by finding that "the optional employer medical evaluation is a medical expense within the meaning of the Act." *See supra* ¶ 14. The concept of medical necessity is the foundation of all medical treatment provided under the Workers' Compensation Law. Reasonable and necessary medical expenses are enumerated at the outset of Section 71-3-15(1). Koestler was retained by FARA on behalf of Intervenors for an evaluation of Brent. Koestler did not provide "such medical, surgical, and other attendance or treatment, nurse and hospital service, medicine, crutches, artificial members, and other apparatus for such period as the nature of the injury or the process of recovery may require." § 71-3-15(1); *see supra* ¶ 19. Courts should neither broaden nor restrict the language of a statute. We find that the trial court erred by requiring Brent to repay the $2,887.50. And the Court of Appeals erred by affirming. Thus, we are compelled to reverse both the judgments of the Hinds County Circuit Court and of the Court of Appeals. Judgment is rendered in favor of Brent.

¶25. **REVERSED AND RENDERED.**

**KITCHENS AND KING, P.JJ., COLEMAN, MAXWELL, BEAM, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR.**

10